**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

———————————————————————— )
**CYNTHIA DIZIO and JAMES DIZIO,** )
**individually and as next friend** )
**of Jane Doe,** )
)
**Plaintiffs,** )
) **Civil Action No.**
**v.** ) **20-11859-FDS**
)
**MANCHESTER ESSEX REGIONAL** )
**SCHOOL DISTRICT (MERSD),** )
**PAMELA BEAUDOIN, STEVE GUDITUS,** )
**ALLISON COLLINS, HELEN BRYANT,** )
**DR. DEBRA WELLING,** )
**KEVIN O'MALEY, and DONNA SMITH,** )
)
**Defendants.** )
———————————————————————— )

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION**
**<u>FOR JUDGMENT ON THE PLEADINGS</u>**

SAYLOR, C.J.

This lawsuit arises out of a dispute between a school district and the parents of a disabled

child.  Plaintiffs Cynthia and James Dizio are the parents of Jane Doe.[1]  In substance, plaintiffs

allege that defendants Manchester Essex Regional School District ("MERSD") and the various

named school officials refused to provide Jane with a free appropriate public education

("FAPE"), as guaranteed by the Individuals with Disabilities Education Act ("IDEA").

The complaint asserts eight claims:  (1) a claim for discrimination based on disability in

violation of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the

Rehabilitation Act, 29 U.S.C. § 794; (2) a claim under 42 U.S.C. § 1983 for due-process

---

[1] Jane Doe is a pseudonym.

violations and failure to provide a FAPE as guaranteed by the IDEA, 20 U.S.C. § 1400(d)(1)(A);

(3) a claim for violations of the IDEA; (4) a claim for violations of the Massachusetts Civil

Rights Act, Mass. Gen. Laws ch. 12, § 11I; (5) negligence; (6) retaliation; (7) negligent and

intentional infliction of emotional distress; and (8) loss of consortium.[2]

## I.     Background

### A.     Factual Background

The facts underlying plaintiffs' claims are set forth in detail in the Court's amended

memorandum and order dated August 12, 2019.  *See Dizio v. Manchester Essex Reg'l Sch. Dist.*,

2019 WL 3797015, at *3-6 (D. Mass. Aug. 12, 2019) ("*Dizio I*").

### B.     Procedural Background

On October 16, 2020, plaintiffs filed the complaint in this action.  The allegations involve

events that occurred during school years beginning in 2012-13 and ending in 2015-16.  The last

complained-of events occurred in October 2016.

Plaintiffs previously filed a complaint that alleged identical claims.  That complaint was

filed on December 3, 2018.  On August 12, 2019, the Court dismissed Counts 1 through 5 for

lack of subject-matter jurisdiction because it found that plaintiffs had failed to exhaust their

administrative remedies at the Bureau of Special Education Appeals ("BSEA"), as IDEA

requires, and dismissed Counts 6 through 8 because their success was dependent on the IDEA

claims, which were being dismissed for failure to exhaust, and those counts therefore failed to

state a claim for relief.[3]  On September 12, 2019, plaintiffs appealed that dismissal to the First

---

[2] Plaintiffs' complaint failed to comply with the one-claim-per-count requirement of Fed. R. Civ. P. 10(b). For example, Count 1 alleges violations of both the ADA and § 504 of the Rehabilitation Act. Because of this, the Court organized the opinion by related claims as opposed to discussing each individual count.

[3] The Court had issued a memorandum and order on August 8, 2019, dismissing plaintiffs' claims on those same grounds.  That same day, the First Circuit issued its decision in *Parent/Prof'l Advocacy League, et al. v. City*

2

Circuit.  On September 24, 2019, they moved this Court to stay the action while they sought administrative relief at the BSEA.

On September 30, 2019, plaintiffs filed a hearing request with the BSEA, contending that MERSD denied Jane a FAPE by failing to place her on a Section 504 plan or an Individualized Education Program ("IEP") in elementary and middle school.  (Dkt. No. 28, Def. Mem. Ex. 2 ("BSEA Decision") at 1).  On October 10, 2019, MERSD filed a motion to dismiss, with the BSEA, as to all claims, for failure to state a claim on the grounds that plaintiffs' claims were time-barred under the applicable statute of limitations.  (*Id.*).

On October 8, 2019, plaintiffs moved for reconsideration of this Court's August 12, 2019 order.  On October 23, 2019, the Court denied their motions for reconsideration of its August 12, 2019 order and to stay the case.

On December 2, 2019, the BSEA granted MERSD's motion to dismiss on the grounds that plaintiffs' claims "[fell] outside the applicable statute of limitations."  (*Id.* at 9-10); *see also* 20 U.S.C. § 1415(f)(3)(C).  On December 9, 2019, the First Circuit denied plaintiffs' appeal as untimely.

On December 15, 2020, defendants moved to dismiss the complaint in this action for lack of subject-matter jurisdiction on two grounds.  First, they contended that "the original complaint was dismissed as a result of the plaintiffs' failure to exhaust their administrative remedies, the dismissal of which was on the merits, [and therefore] the plaintiffs are not entitled to refile the suit under [the Massachusetts renewal statute, Mass. Gen. Laws ch.] 260, § 32 . . . ."  (Dkt. No. 7, Defs. Mot. Dismiss at 2).  Second, they contended that because the BSEA dismissed plaintiffs'

---

*of Springfield, et al.*, 2019 WL 3729033 (1st Cir. Aug. 8, 2019).  On August 12, 2019, the Court issued an amended memorandum and order to provide updated citations in light of that opinion.

claims as untimely, plaintiffs did not in fact exhaust their administrative remedies, and therefore, this Court still lacked subject-matter jurisdiction over the action. (*Id.*). The Court denied defendants' motion as to the second ground. As to the first ground, the motion was also denied, but without prejudice to the raising of any other issues involving the timeliness of any of plaintiffs' claims.

On January 21, 2022, defendants filed this motion for judgment on the pleadings.

## II.   <u>Standard of Review</u>

A Rule 12(c) motion for judgment on the pleadings differs from a Rule 12(b)(6) motion to dismiss primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). But it is treated similarly. *See id.* at 54. To survive a motion for judgment on the pleadings, a complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 182 (1st Cir. 2006). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

4

III.  **Analysis**

  A.  **IDEA, Section 504 of the Rehabilitation Act, and ADA Claims**

    1.  **Statute of Limitations**

Both plaintiffs and defendants acknowledge that for the Massachusetts renewal statute to apply, the original action must have been filed within the appropriate limitations period.  (Dkt. No. 28, Def. Mem. at 4; Dkt. No. 32, Pl. Mem. at 3).  *See Maltz v. Smith Barney, Inc.*, 427 Mass. 560, 561 (1998); *see also Gauthier v. United States*, 2011 WL 3902770, at *6 (D. Mass. Sept. 2, 2011).

The IDEA generally has a two-year statute of limitations.  20 U.S.C. § 1415(f)(3)(C); 1 AMERICANS WITH DISAB.: PRACT. & COMPLIANCE MANUAL § 1:233 (Feb. 2022 Update).  Section 504 and the ADA do not have their own statute of limitations.  Typically, when a federal statute does not have its own statute of limitations, courts look to a comparable state statute and apply that limitations period.  *Providence Sch. Dep't v. Ana C.*, 108 F.3d 1, 3 (1st Cir. 1997) (citing *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1984)).

However, when there is "a more sharply focused federal analogue," courts have adopted federal limitations periods instead of the state limitations period.  *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 736 (3d Cir. 2009) (quoting *Rossiter v. Potter*, 357 F.3d 26, 33 (1st Cir.2004)).  That is true as to § 504 claims that are premised on IDEA claims.  *P.P. ex rel. Michael P.*, 585 F.3d at 736.  When there is no separate claim of disability discrimination under § 504, courts have borrowed the IDEA's statute of limitations for the § 504 claim.  *Id.*; *see also Baker v. S. York Area Sch. Dist.*, 2009 WL 4793954, at *3 (M.D. Pa. Dec. 8, 2009); *Bell v. Bd. of Educ. of Albuquerque Pub. Sch.*, 2008 WL 4104070, at *13 (D.N.M. Mar.26, 2008).  The same is true for ADA claims.  *See E.E. v. Ridgefield Park Bd. of Educ.*, 2020 WL 3097473, at *8 (D.N.J. June 11, 2020*), aff'd sub nom. Esposito v. Ridgefield Park Bd. of Educ.*, 856 F. App'x

367 (3d Cir. 2021) (holding that the IDEA two-year statute of limitations applies when ADA claims and § 504 claims are based on plaintiff's IDEA claims).

Here, the § 504 and ADA claims concern whether the defendants denied Jane Doe a FAPE.  The claims are essentially identical to the IDEA claims and for that reason, this Court will apply the two-year IDEA limitations period to the § 504 and ADA claims.

The original action was filed on December 3, 2018.  The action is based on events that occurred in October 2016 and earlier.  Because the original action was filed beyond the two-year limitations period, the IDEA, § 504, and ADA claims cannot survive unless the Massachusetts minority tolling statute applies.

### 2.   Massachusetts Minority Tolling Statute

Jane Doe was a minor when her claim accrued.  Accordingly, the Massachusetts minority tolling provision applies to her case unless it would be "inconsistent with the federal policy underlying [her] cause of action."  *See Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (citation omitted).

The federal statute at issue is the IDEA.  The First Circuit has determined that one goal of the IDEA is the rapid disposition of disputes regarding a student's educational placement, because children develop quickly and their needs can often change from year to year.  *Amann v. Town of Stow*, 991 F.2d 929, 932 (1st Cir. 1993) (noting that the "legislative history, statutory terms, and regulatory framework of the IDEA all emphasize promptness as an indispensable element of the statutory scheme").

In *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 224 (2d Cir. 2003), the Second Circuit declined to apply an equitable tolling provision in a Connecticut statute to IDEA claims. *Id.* at 224.  The state statute at issue created a two-year limitations period on claims challenging educational placements but allowed for equitable tolling until plaintiffs received notice of the

statute's procedures. *Id.* at 223. The equitable-tolling rule would have allowed the claims to be brought a significant time after they accrued. Because of that, the Second Circuit declined to borrow the tolling provision of the Connecticut statute; the court explained, allowing claims to be brought "long after their accrual date" would defeat one of the IDEA's "fundamental goals," "the expeditious resolution of educational programming disputes." *Id.* at 224.

A number of other courts have similarly declined to apply state-law tolling provisions to IDEA claims. *See Strawn v. Mo. State Bd. of Educ.*, 210 F.3d 954, 958 (8th Cir.2000) ("[W]e decline to apply a tolling provision for minors because tolling the statute of limitations for an entire childhood would frustrate federal policy . . . ."); *Alexopulos v. San Francisco Unified Sch. Dist.*, 817 F.2d 551, 555-56 (9th Cir. 1987) (holding that California's minority tolling provision should not apply because "[t]o permit tolling in favor of the children would undercut [the] federal policy" underlying the IDEA); *Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 692 (S.D.N.Y. 2011) (holding that applying the state tolling statute "would allow claims to be brought years after they accrued and often after any effective remedy could be fashioned that could improve the student's educational program" and that is "fundamentally inconsistent" with the goals of the IDEA).

Courts have also declined to extend minority tolling statutes to claims brought under the ADA and § 504 of the Rehabilitation Act that are premised on related IDEA claims. *See, e.g.*, *Vinluan v. Ardsley Union Free Sch. Dist.*, 2021 WL 1063482, at *8 (S.D.N.Y. Mar. 18, 2021) ("The Court finds that application of minority tolling to claims brought under the IDEA, ADA, and Section 504 would frustrate federal policy."); *A.T. v. Dry Creek Joint Elementary Sch. Dist.*, 2017 WL 2654854, at *4-5 (E.D. Cal. June 20, 2017) (declining to apply minority tolling to Rehabilitation Act and ADA claims); *L.K. v. Sewanhaka Cent. High Sch. Dist.*, 2015 WL

12964663, at *12 (E.D.N.Y. July 16, 2015), *aff'd*, 641 F. App'x 56 (2d Cir. 2016) ("The goal of federal statutes such as the IDEA, ADA and Rehabilitation Act is to provide students with the services they require as promptly as possible in order to avoid impairing their educational progress.  Consequently, . . .  applying a minority tolling provision in this setting would frustrate the goals of the ADA and Section 504."); *Mullin v. Las Lomitas Elementary Dist.*, 2004 WL 2848021, at *5-6 (N.D. Cal. Apr. 13, 2004).

For the same reasons, this Court will decline to extend the Massachusetts minority tolling statute to the IDEA, § 504, and ADA claims here.  Accordingly, because those claims were filed outside the two-year limitations period, and no tolling period is applicable, the motion for judgment on the pleadings as to Count 1 (ADA claim and § 504 claim) and Count 3 (IDEA claim) will be granted.

**B.      42 U.S.C. § 1983**

IDEA provides a judicial remedy for violations of any right "relating to the identification, evaluation, or educational placement of [a] child, or the provision of a free appropriate public education to such child."  20 U.S.C § 1415(b)(6).  Because the IDEA provides a comprehensive remedial scheme, the Supreme Court held in *Smith v. Robinson*, 468 U.S. 992 (1984), that it precludes a § 1983 claim premised on the same grounds.[4]

> In this case, we think Congress' intent is clear. . . . Congress perceived the EHA as the most effective vehicle for protecting the constitutional right of a handicapped child to a public education.  We conclude, therefore, that where the EHA is available to a handicapped child asserting a right to a free appropriate public education, based either on the EHA or on the Equal Protection Clause of the Fourteenth Amendment, *the EHA is the exclusive avenue* through which the child and his parents or guardian can pursue their claim.

---

[4] The holding in *Smith*, although superseded in part by the passage of § 1415(l) of IDEA, was not overruled to the extent that the Court found that the IDEA provides a comprehensive remedial scheme and therefore supplants a § 1983 remedy.

*Smith*, 468 U.S. at 1012-13 (emphasis added); [5] *see also A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 803 (3d Cir. 2007) ("Given this comprehensive scheme, Congress did not intend § 1983 to be available to remedy violations of the IDEA."); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006). Indeed, since *Smith*, the Supreme Court has continued to refer to the IDEA as an example of a statutory enforcement scheme that precludes a § 1983 remedy. *See Rancho Palos Verdes*, 544 U.S. 113, 121 (2005) (citing to *Smith* for its holding that "§ 1983 [is] unavailable to remedy [certain] violations of federal statutory rights"); *Blessing v. Freestone*, 520 U.S. 329, 347-48 (1997) (same); *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423-24, 427 (1987) (same).

Because the § 1983 and IDEA claims are virtually identical, the § 1983 claim cannot survive. Accordingly, the motion for judgment on the pleadings as to Count 2 will be granted.

## C.  Remaining State-Law Claims

As discussed by this Court in *Dizio I*, the success of the remaining state-law claims (Counts 4, 5, 6, 7, and 8) is clearly dependent on proof of an IDEA violation, and therefore the claims are foreclosed. *See D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 39 (1st Cir. 2012) (explaining that "plaintiffs cannot disguise an IDEA claim in other garb '[w]here the essence of the claim is one stated under the IDEA for denial of FAPE,'") (quoting *Diaz-Fonseca*, 451 F.3d at 19); *Diaz-Fonseca* 451 F.3d at 29 ("where the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983—or any other federal statute for that matter—in an attempt to evade the limited remedial structure of the IDEA"); *Millay v. Surry Sch. Dep't*, 2009 WL 5184388, at *28-29 & n.31 (D. Me. Dec. 22, 2009) (where additional claims "are not premised on facts and circumstances extraneous to the process of trying to provide a [FAPE]," those

---

[5] IDEA was previously known as the Education for all Handicapped Children Act (EHA).

claims should be dismissed because "they are presented on facts bound together with [an] IDEA claim and *Diaz-Fonseca* forecloses relief in such situations"), *report and recommendation adopted sub nom. Millay ex rel. YRM v. Surry Sch. Dep't*, 707 F. Supp. 2d 56 (D. Me. 2010) (citing *Diaz-Fonseca*, 451 F.3d at 29).

Count 4, although brought under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 111, alleges that "[d]efendants violated plaintiff's rights under state and federal law to be free from discrimination based on her disability *and her right to a FAPE*." (Compl. ¶ 149) (emphasis added). Count 5, a claim for negligence, alleges that "[d]efendants breached the duty owed to Jane of a FAPE . . . ." (*Id.* ¶ 161). Counts 4 and 5 of the complaint *explicitly* use the term FAPE—indeed, the denial of a FAPE is the specific harm alleged in those causes of action. Accordingly, Counts 4 and 5 will be dismissed.

Count 6 alleges retaliation against all defendants under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 2. Although Count 6 is not as directly premised on the denial of a FAPE, it is clearly dependent on proof of an IDEA violation. The claims in Count 6 arise from Jane's absence from school and are based entirely on the school's efforts to enforce her attendance and address the consequences of her absence. As a practical matter, it would be impossible to try such claims without trying the underlying claim for denial of a FAPE; whether Jane's absence was justified, or the school's actions were appropriate, depends entirely on whether the school had met its statutory obligations under IDEA. [6] Count 6 therefore fails to

---

[6] Normally, a retaliation claim can be brought even if the plaintiff cannot prove a violation of the underlying statute. "Both the Rehabilitation Act, through its implementing regulations, *see* 28 C.F.R. § 42.503(b)(1)(vii), and the ADA, *see* 42 U.S.C. § 12203(a), prohibit retaliation against any person, whether disabled or not, for opposing disability-based discrimination made unlawful by those statutes." *D.B. ex rel. Elizabeth B.*, 675 F.3d at 40. "A plaintiff need not succeed on a disability discrimination claim in order to assert a claim for retaliation." *Id.* at 40-41 (citing *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 36 (1st Cir. 2011)). Similarly, plaintiffs "are not otherwise barred from bringing a non-IDEA claim alongside an IDEA claim, even if

state a claim for retaliation independent of IDEA, and will be dismissed.

Count 7 alleges negligent and intentional infliction of emotional distress ("NIED") due to defendants' discrimination and retaliation against Jane Doe.  It specifically alleges that despite MERSD's "aware[ness]" of Jane's various alleged disabilities and emotional disorder, and despite "repeated updates regarding Jane's mental deterioration, breakdowns, crying episodes, and overall depression and anxiety, Defendant[s] continued to retaliate against her."  (Compl. ¶ 177).  The alleged retaliation, again, consisted of truancy enforcement efforts and a refusal to permit a non-student to participate in student activities.[7]  Those allegations flow directly from the defendants' alleged retaliation against Jane, which, as discussed above, are allegations bound up with the IDEA claims.  The NIED claim therefore "does not give rise to a plausible entitlement to relief against [defendants] beyond the remedies authorized by the IDEA," and will be dismissed.  *See Millay*, 2009 WL 5184388, at *29.

Finally, Count 8 is a claim for loss of consortium pursuant to Mass. Gen. Laws ch. 231, § 85X.  It specifically alleges that "[a]s a direct and proximate result of the defendants' negligence, Cindy and Jim Dizio have been deprived of the society, love, affection, companionship, care and services of their child, Jane . . . ."  (Compl. ¶ 184).  Because the claim for loss of consortium is based on Count 5's claim for negligence due to "[d]efendants breach[] [of] the duty owed to Jane of a FAPE," (*id.* ¶ 161), which will be dismissed for its dependence on the IDEA claim, Count 8 does not state a plausible claim for relief, and will also be

---

there is *some* overlap between the two claims" but they "cannot disguise an IDEA claim in other garb" where the basis of the claim is one for the denial of FAPE.  *Id.* at 39 (emphasis in original).

[7] Jane was not enrolled in the MERSD schools when she sought to participate in various extracurricular activities; the Dizios had withdrawn her from school because of defendants' alleged failure to provide her with a FAPE.  And, according to the complaint, school officials would not allow Jane to participate in school activities because she was not enrolled in school.  *Dizio I*, 2019 WL 3797015, at *12.

dismissed. *See Millay*, 2009 WL 5184388, at *29 ("Relabeling the claims . . . does not succeed in making them something other than claims related to the evaluation and placement of [Jane Doe] under the IDEA.").

In summary, the remaining state-law claims for violations of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 111 (Count 4), negligence (Count 5), retaliation (Count 6), negligent and intentional infliction of emotional distress (Count 7), and loss of consortium (Count 8) will be dismissed in accordance with *Diaz-Fonseca* for failure to state a claim upon which relief can be granted.[8]

**IV.    Conclusion**

For the foregoing reasons, defendants' motion for judgment on the pleadings is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: March 31, 2022                      Chief Judge, United States District Court

---

[8] The Court notes that it would decline to exercise supplemental jurisdiction over any of the state-law claims even if they were viable.